IN THE UNITED STATES DISTRICT COURT
FOR NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK LG CELLPHONE, SERIAL NUMBER GPLGL164VCB, CURRENTLY LOCATED AT ATF, MANCHESTER FIELD OFFICE | Case No. 19-mj-204-01-AJ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, James Martin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since November 2017. I have over twenty years of law enforcement experience. My assignments have included investigating criminal violations of federal firearms statutes, arson statutes, and narcotics offenses related to the possession and distribution of controlled substance.

3. I have attended and completed the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program, ATF Special Agent Basic Training Program, FLETC Basic Law Enforcement School, Federal Air Marshal Training School, New Hampshire Police Standards and Training Counsel Full Time Police Officer School and several Post

Academy Schools. Through my training, education, and experience, I have become familiar generally with the manner in which persons involved in criminal activity attempt to avoid detection by law enforcement. In the course of participating in investigations of criminal offenses including drug and firearms trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants, and reviews of consensually recorded conversations and meetings.

4. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports given to me by other members of law enforcement. Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of search warrants, I have not included details about every aspect of the investigation. While this affidavit contains all the material information I am aware of that is pertinent to the requested search warrants, it does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a black LG cellphone, serial number GPLGL164VCB, hereinafter the "Device." The Device is currently located in Manchester, New Hampshire, in the ATF Evidence Vault.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

7. On Scotty GONZALEZ was convicted of Simple Assault in violation of RSA 631:2-a on October 17, 2017, in the State of New Hampshire, 2nd Circuit, District Division, Lebanon, case no. 452-17-CR-1236. According to police reports, the victim was in a romantic relationship with GONZALEZ and the two have a child together.

8. On November 21, 2017, the court entered an order authorizing the return of seized firearms to GONZALEZ.

9. On October 16, 2018, GONZALEZ was served by certified mail with an ATF warning notice advising him that he is legally prohibited from possessing firearms and ammunition by virtue of his 2017 Simple Assault conviction because it is a misdemeanor crime of domestic violence, as defined in 18 U.S.C. 921(a)(33).

10. In On January 30, 2019, GONZALEZ was convicted of Controlled Drug Act – Acts Prohibited (Cocaine), a felony, in Grafton Superior Court in New Hampshire, in case no. 215-2018-CR-00396.  GONZALEZ was sentenced to 2 years of probation and was being supervised by the New Hampshire Department of Correction, Probation/Parole.

11. In July of 2019 the Enfield Police Department began receiving information from a Confidential Source ("CS").[1] CS provided information that GONZALEZ was in possession of an

---

[1] CS is providing information to better the community and, to my knowledge, is not cooperating in exchange for consideration on any charges.  CS has received a citation for disorderly conduct (2018) and has three pending misdemeanor theft by unauthorized taking charges. CS provided information purportedly based on first-hand knowledge and provided law enforcement officers with items, detailed below, that corroborated CS's statements.  In addition, as described below, items CS described to law enforcement were recovered during the search of GONZALEZ's house.  For these reasons, officers with the Enfield Police and I consider the information provided by CS to be reliable.

AR style rifle. CS provided screen shots of text messages that CS stated were between CS and GONZALEZ. In those messages, dated July 31, 2019, the individual identified as GONZALEZ sent messages inviting CS to "see my new AR when you get a chance" and stating that GONZALEZ "shot it yesterday." GONZALEZ also discussed videos of himself shooting firearms.

12.     On July 31, 2019, a Probation Officer, accompanied by Enfield Police, conducted a "home visit" at GONZALEZ's residence. During the home visit, the Probation Officer seized (1) a Bushmaster, Model XM15-E2S rifle, serial number BK5026978 lower with two rifle barrels; (2) over 300 rounds of ammunition; and (3) the Device. The rifle lower and two receivers were found underneath a crib. GONZALEZ's partner claimed that the rifle was hers but stated that she did not have any receipts for the rifle. GONZALEZ had previously reported that the Device was his to the New Hampshire Department of Correction, Probation/Parole as part of his conditions of release.

13.     The Probation Officer conducted a preliminary search of the Device and located a photograph of a part of an assault rifle.

14.     On August 1, 2019, ATF took custody of the items seized during the July 31, 2019 search. Therefore, while the Probation Officer might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

15.     On September 5, 2019, an employee of the Hanover Police Department began reviewing some of GONZALEZ's jail calls, at the request of the Enfield Police Department. On one call, dated July 31, 2019, GONZALEZ instructs a female to go to a website called lookout.com in order to factory re-set his phone and destroy any evidence that will be on the phone.[2] On a call dated August 3, 2019, a female tells GONZALEZ that she figured out how to clear the Device.

16.     The Device is currently in storage at ATF, Manchester Field Office, located at 1750 Elm Street, Suite 301, Manchester, NH. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the New Hampshire Department of Correction, Probation/Parole. It is my understanding that since its seizure the Device has been stored in a manner that precludes it from connecting with WiFi and cellular services. It is my understanding that a remote re-set will not work unless the Device is connected to WiFi and that the Device retains all of the content it had on it when seized.

## TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

---

[2] This call was in both English and Spanish. The reviewing employee speaks both languages and provided a summary of this and other calls.

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://lg.com I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and

experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.	I submit that this affidavit supports probable cause that GONZALEZ has committed a violation of 18 U.S.C. § 922(g), prohibited person in possession of a firearm and ammunition, and for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ James Martin
James Martin
Special Agent
ATF

Subscribed and sworn to before me
On September 30, 2019:

*[signature]*
Hon. Andrea K. Johnstone
United States Magistrate Judge

## **ATTACHMENT A**

The property to be searched is a black LG cellphone, serial number GPLGL164VCB, hereinafter the "Device." The Device is currently located in Manchester, New Hampshire, in the ATF Evidence Vault.

    This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922 (g), Possession of a firearm and or ammunition by a prohibited person, including:

    a. any information, including text messages, videos, and photographs, related to the possession of firearms and ammunition; and

    b. any information related to sources of firearms and ammunition (including names, addresses, phone numbers, or any other identifying information).

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.